**TIFFANY & BOSCO, P.A.**
Krista J. Nielson, Esq.
Nevada Bar No. 10698
Regina A. Habermas, Esq.
Nevada Bar No. 8481
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com
TB File No. 23-72012

Attorneys for *Secured Creditor* NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage Pass-Through Certificates, Series 2007-OA3

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | BK Case No. 23-12257-mkn |
| | Chapter 11 |
| VICTOR ALEJANDRO SORIANO AKA VICTOR ALENJANDRO SORIANO FLORES AKA VICTOR A. SORIANO, | **OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION #2** |
| Debtor. | **Subject Property**<br>**8660 Giles Street**<br>**Las Vegas, NV 89123** |

**OBJECTION TO CONFIRMATION OF DEBTORS' AMENDED
PLAN OF REORGANIZATION #2**

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage Pass-Through Certificates, Series 2007-OA3 ("Creditor"), a secured creditor in the above-captioned bankruptcy proceeding, hereby submits the following Objection to Confirmation of Amended Plan of Reorganization #2 (Docket Number 50). This Objection is based on the authorities cited

1

herein and on such additional submissions and argument as may be presented at or before the confirmation hearing.

## I.    STATEMENT OF FACTS

Creditor's claim is evidenced by a promissory note executed by Debtor and dated November 20, 2006, in the original principal sum of $430,000.00 (the "Note"). *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register. The Note is secured by a deed of trust (the "Deed of Trust") recorded in first position against the real property commonly known as 8660 Giles Street, Las Vegas, NV 89123 (the "Property"). *Id*. Creditor holds possession of the Note, which is indorsed in blank. *Id*. The beneficial interest in the Deed of Trust was also subsequently transferred to Creditor. *Id*. Together, the Note and Deed of Trust are collectively referred to hereafter as the "Loan."

Since 2013, Debtor has filed a total of six bankruptcy cases and all five of the prior cases were dismissed due to Debtor's failure to comply with the Bankruptcy Code. First, on May 30, 2013, Debtor filed a joint voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 13-14770 (the "First Bankruptcy").[1] The First Bankruptcy was dismissed on December 18, 2014 upon the U.S. Trustee's Motion to Dismiss due to Debtors' "failure to expeditiously prosecute the case as fiduciaries to their creditors". *See* First Bankruptcy Docket Numbers 39 and 43.

On January 29, 2016, the Debtor filed another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 16-10429 (the "Second Bankruptcy"). Once again, the U.S. Trustee sought conversion or dismissal of the case and the Second Bankruptcy was ultimately dismissed on January 11, 2017. *See* Second Bankruptcy Docket Numbers 81 and 90.

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the papers and pleadings on file and part of the record in Debtor's prior bankruptcy actions and the Instant Bankruptcy.

1. Approximately two (2) months after the Second Bankruptcy was dismissed, on March 27, 2017, the Debtor filed another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 17-11472 (the "Third Bankruptcy"). The Third Bankruptcy was dismissed on August 19, 2019 upon the motion of Creditor. *See* Third Bankruptcy Docket Numbers 85 and 91.

While the Third Bankruptcy case was still active and pending, on June 11, 2019, Debtor filed yet another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 19-13714 (the "Fourth Bankruptcy"). The Fourth Bankruptcy was dismissed on February 24, 2020 upon the motion of Creditor. *See* Fourth Bankruptcy Docket Numbers 26 and 100.

Finally, on January 31, 2023, Debtor filed yet another voluntary petition for relief, this time under Chapter 13 of the Bankruptcy Code, and was assigned case number 23-10313 (the "Fifth Bankruptcy"). The Fifth Bankruptcy was dismissed on March 31, 2023 for failure to file required documents under Section 521(i). *See* Fifth Bankruptcy Docket Numbers 12 and 13. A little more than two (2) months later, on June 2, 2023, Debtor filed the bare bones Petition that initiated the above-captioned action (the "Instant Bankruptcy"). *See* Instant Bankruptcy Docket Number 1.

On August 11, 2023, Creditor filed its Proof of Claim, secured by the Property, with a total outstanding balance in the amount of $752,614.57. *See* Initial Claim Number 8 on the Instant Bankruptcy Claims Register. On October 3, 2023, Creditor filed an amended Proof of Claim, reflecting the total claim of $752,614.57 and identifying the pre-petition arrears owed to Creditor as $405,715.50. *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register. As of the filing of the Petition, Creditor had advanced more than $51,000.00 for the payment of taxes and insurance on the Property. *Id*. The monthly payment due on the Loan was $2,885.08. *Id*. The Loan was contractually due for the August 1, 2011 payment, due more than twelve years ago, and Creditor had not received a payment from Debtor since March 3, 2020. *Id*.

On August 2, 2023, Debtor filed an initial Motion to Value Collateral of Mortgage Loan Pursuant to §506(A) (the "Failed Motion to Value"), seeking to value the Property at $560,000.00 and bifurcate Creditor's claim. *See* Instant Bankruptcy Docket Number 31. On August 16, 2023, Creditor filed its Opposition to the Failed Motion to Value and established that Debtor had failed to satisfy his burden to demonstrate that the Property should be valued at $560,000.00 or that Creditor's claim should be bifurcated. *See* Instant Bankruptcy Docket Number 40.

The same day Creditor filed its Opposition to the Failed Motion to Value, Debtor filed an Application to Employ Realty One Group to List Certain Real Property on a Commission Bases Pursuant to U.S.C. 327(a) and 328(a) and Federal Rules of Bankruptcy Procedure 2014 (Instant Bankruptcy Docket Number 41, the "Application to Employ Realtor"). Attached to the Application to Employ Realtor was a listing agreement executed in July 2023, pursuant to which Debtor and Maribel Soriano agreed to list the Property for the price of $798,888.00. *Id*. at 41-2, p. 3 of 21.

On August 30, 2023, the Court held an initial hearing on the Failed Motion to Value. *See* Instant Bankruptcy Docket Number 48. During that hearing, the Court noted Creditor opposed the Failed Motion to Value and continued the hearing so that Debtor could provide some evidence the Property was not the Debtor's principal residence despite the fact that the Property was the Debtor's residence during the Fifth Bankruptcy. The Court set September 13, 2023 as the deadline for Debtor to file a supplement and September 20, 2023 as the deadline for Creditor to file any response to the supplement. The Court then continued the hearing on the Failed Motion to Value to September 27, 2023.

/././

/././

/././

/././

Debtor failed to file any supplement to the Failed Motion to Value prior to the continued hearing. *See generally*, Instant Bankruptcy Docket. As a result, on September 27, 2023, the Court denied the Failed Motion to Value. The Order denying the motion was entered on the Docket on October 11, 2023. *See* Instant Bankruptcy Docket Number 68.

While the Failed Motion to Value was pending, on August 31, 2023, the Debtor filed an initial Plan of Reorganization for Small Business Under Chapter 11. *See* Instant Bankruptcy Docket Number 49. Just a few days later, the Debtor filed Amended Plan of Reorganization #2 (Instant Bankruptcy Docket Number 50, the "Plan"). Creditor's claim is classified as a secured claim in Class 2 and Debtor proposes the following treatment of the claim:

> *Pursuant to § 506(a) of the Bankruptcy Code, the claim shall be bifurcated into secured and unsecured portions. The secured claim shall be limited to the value of the collateral, $560,000 or as otherwise ordered by the court. The difference between the debt and the value of the collateral, which amounts to $192,614.57, shall be reclassified as an unsecured claim and will receive a pro rata distribution alongside other unsecured creditors in the designated class of unsecured creditors.*
>
> *The <u>secured portion of the Bank's claim, being $560,000</u>, shall be paid in monthly principal and interest payments based on a 30-year amortization at an interest rate of 9.5%. The monthly payment shall be **$4,708.78**. The existing maturity date of the loan will remain unchanged. Payments towards this claim shall commence on the first full month following the date of confirmation of this plan.*
>
> *Upon completion of the payments as described in this provision, the debtor's obligation to the Bank regarding this debt shall be deemed fully satisfied. The Bank will then be obliged to release any liens or claims related to this debt.*

*See* Instant Bankruptcy Docket Number 50, p. 2-3 (bold emphasis in original, underline emphasis added).

On October 6, 2023, Debtor filed a Renewed Motion to Value Collateral of Mortgage Loan Pursuant to §506(A) (the "Renewed Motion to Value"), seeking to value the Property at $605,000.00 and bifurcate Creditor's claim. *See* Instant Bankruptcy

5

Docket Number 60. On October 25, 2023, Creditor filed its Opposition to the Renewed Motion to Value and established that Debtor had failed to satisfy his burden to demonstrate that the Property should be valued at $605,000.00 or that Creditor's claim should be bifurcated. *See* Instant Bankruptcy Docket Number 79. On November 8, 2023, the Court conducted an initial hearing on the Renewed Motion to Value and granted Debtor's request for yet another continuance of the hearing. *See* Instant Bankruptcy Docket Number 85. Therefore, as of the filing of this Objection, Debtor has still not satisfied his burden to establish that Creditor's claim may be crammed down and bifurcated.

Creditor now objects to Confirmation of the Plan filed herein by the Debtor.

## II.      ARGUMENT

### A.   THE PLAN IMPROPERLY PROPOSES TO MODIFY THE RIGHTS OF A CREDITOR HOLDING A CLAIM SECURED BY DEBTOR'S PRINCIPAL RESIDENCE

11 U.S.C. § 1123(b)(5) provides that a plan may modify the rights of holders of secured claims, "other than a claim secured only by a security interest in real property that is the debtor's principal residence…" The Plan proposes treatment of Creditor's claim based upon the Failed Motion to Value and therefore seeks to bifurcate Creditor's claim based on Debtor's initially proposed $560,000.00 valuation of the Property. *See* Instant Bankruptcy Docket Number 50. However, in the Renewed Motion to Value, Debtor seeks to value the Property at $605,000.00. *See* Instant Bankruptcy Docket Number 60. Because the Plan does not reflect the Debtor's most recent contention regarding the value of the Property, the Court should summarily deny confirmation of the Plan.

Even if the Court considers the merits of the proposed treatment, the Plan cannot be confirmed because Debtor has failed to establish the value of the Property and has also failed to demonstrate that the Property is not Debtor's principal residence. As such, Debtor has failed to establish that Creditor's claim may be modified as proposed in the Plan.

/././

6

Moreover, as demonstrated in Creditor's Opposition to the Renewed Motion to Value, Debtor cannot satisfy that burden. *See* Instant Bankruptcy Docket Number 79. Although Debtor filed a Declaration in support of the Renewed Motion to Value (*see* Instant Bankruptcy Docket Number 64), that document fails to establish that the Property is not Debtor's principal residence. Debtor's attempt to demonstrate he is entitled to the relief he seeks consists of the following statement:

> I own real property commonly known as 8660 Giles Street, Las Vegas, NV 89123 ("Property") which I utilize as an investment rental property. The property is listed on my schedules as an investment property. See schedules A/B. I have used it as a rental property, since, at least, January 2023.

*See* Instant Bankruptcy Docket Number 64, ¶ 2. That is the entirety of the "proof" offered by Debtor to establish he is not attempting to violate the anti-modification provision of 11 U.S.C. § 1123(b)(5). The Declaration does not include an affirmative statement that the Debtor does not reside at the Property. Even if the Declaration did include such a self-serving statement, the Declaration would be woefully insufficient to establish that Debtor may bifurcate Creditor's claim as he is attempting to do.

And the information actually included in the Declaration is directly contradicted by the Petition that initiated the Fifth Bankruptcy. *See* Fifth Bankruptcy Docket Number 1. Debtor filed that Petition on January 31, 2023, executed it under penalty of perjury, and identified the Property as his primary residence at that time. *Id*. Yet, the Declaration in support of the Renewed Motion to Value claims that Debtor was already using the Property as an investment Property in January 2023. *See* Instant Bankruptcy Docket Number 64, ¶ 2. Debtor has once again failed to establish that the Property is not his primary residence.

/./././
/././
/././
/././

7

Creditor is still informed and believes that the Property is the Debtor's principal residence for a number of reasons. First, Creditor's records identify Debtor's mailing address as that of the Property as evidenced by the Annual Escrow Account Disclosure Statement attached to Creditor's Proof of Claim. *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register at p. 11.

Second, as noted above, when Debtor filed the Fifth Bankruptcy on January 31, 2023, Debtor identified the Property as Debtor's primary residence. *See* Fifth Bankruptcy Docket Number 1. Also, Debtor never filed a change of address in the Fifth Bankruptcy, which was not dismissed until March 31, 2023, just two months before Debtor filed the Instant Bankruptcy. *See generally* Fifth Bankruptcy Docket. Yet, when Debtor filed his Statement of Financial Affairs in the Instant Bankruptcy, Debtor claimed he resided in the Property from "2001-1/2023." *See* Instant Bankruptcy Docket Number 17 at p. 32. Debtor's various representations to this Court have been contradictory and do not establish that the Property is not Debtor's residence.

Third, as evidenced by the Appraisal attached to Debtor's Failed Motion to Value, the Debtor's mailing address with the Clark County Assessor remained the Property address as of June 1, 2023. *See* Instant Bankruptcy Docket Number 31-1 at p. 13 of 108. That mailing address remained the Property address as of the filing of Creditor's Opposition to the Failed Motion to Value. *See* Exhibit "1" attached to Instant Bankruptcy Docket Number 40. And Debtor's mailing address with the Clark County Assessor remains the Property address as of the filing of this Objection. *See* Updated Clark County Assessor Search Results, a true and correct copy of which is attached hereto as **Exhibit "1."** Fourth, the Appraisal offered by Debtor in support of the Failed Motion to Value identified Victor Soriano and Maribel Soriano as the current owners of record of the Property and described the Property as occupied by the "Owner." *See* Instant Bankruptcy Docket Number 31-1 at p. 1 of 108.

/././

8

Fifth, the documents filed in the Instant Bankruptcy do not support the conclusion that the Property is an investment property rather than Debtor's primary residence. As discussed above, the Declaration in support of the Renewed Motion to Value is contradicted by other sworn statements of the Debtor and fails even to state the Debtor does not reside in the Property. *See* Instant Bankruptcy Docket Number 64. In addition, Debtor's Schedule G fails to list any rental agreements or executory contracts concerning the Property. *See* Instant Bankruptcy Docket Number 17. And Debtor's Monthly Operating Report for August 2023 indicates Debtor is receiving "rents" related to the Property, but fails to provide sufficient information to determine the source of those "rents" other than "Airbnb Rentals," which purportedly totaled $3,643.34 during August 2023. *See* Monthly Operating Report for August 2023, Instant Bankruptcy Docket Number 56, at 56-1, p. 1 of 8.

However, information available from Airbnb demonstrates that, at most, Debtor is renting out rooms within the Property while continuing to reside in the Property. *See* Instant Bankruptcy Docket Number 8 and the Exhibits attached thereto. According to the listings on Airbnb's website, Debtor and his wife, apparently nicknamed "Bell," have listed two different bedrooms for rent within the Property. *Id*. And a number of their guests have enjoyed staying with the Debtor and sharing in the hosts' "fabulous and delicious" meals. *Id*. Some even "felt like a part of the family" while staying in a room. *Id*.

The purported evidence offered by Debtor in support of the Renewed Motion to Value is insufficient to establish that the Property is not Debtor's principal residence. And the weight of the evidence available to the Court gives rise to an inference that the Debtor continues to reside in the Property. Debtor certainly has not satisfied his burden to demonstrate that Creditor's claim may be bifurcated and the Court should deny confirmation of the Plan.

/./././

9

B. **EVEN IF DEBTOR COULD DEMONSTRATE THE PROPERTY IS NOT DEBTOR'S PRINCIPAL RESIDENCE, DEBTOR HAS FAILED TO ESTABLISH THE VALUE OF THE PROPERTY**

11 U.S.C. § 506(a) provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in the property. Although Debtor contends the value of the Property is less than the total amount of Creditor's claim, Debtor has not carried his burden to establish that contention. Rather, as detailed above, Debtor failed in his initial attempt to value the Property at $560,000.00. And Debtor's currently-proposed valuation of the Property at $605,000.00 is similarly deficient.

Debtor is now attempting to rely upon the Appraisal attached to Creditor's Opposition to the Failed Motion to Value. *See* Instant Bankruptcy Docket Number 60, starting at p. 5, and Instant Bankruptcy Docket Number 64. However, that Appraisal was offered by Creditor to establish that the value of the Property was "at least $605,000.00." *See* Instant Bankruptcy Docket Number 40 at 5:10-12.

As such, Creditor did not concede that the Property was worth only $605,000.00 and objects to Debtor's attempt to adopt that valuation for a number of reasons. First, the valuation upon which Debtor now wishes to rely was made as of February 14, 2023 and is stale. *See* Instant Bankruptcy Docket Number 40 at p. 14 of 44. More important, the appraiser was denied access to what was described as a "converted garage" and, therefore, the valuation was based upon incomplete information. Finally, Debtor's proposed valuation of the Property at $605,000.00 is contradicted by the listing agreement executed by Debtor in July 2023 and attached to the Application to Employ Realtor, which stated that the listing price for the Property would be $798,888.00. Debtor himself does not believe the Property is worth only $605,000.00. Based upon the record before the Court, Debtor has failed to establish that the proposed treatment of Creditor's claim is proper and the Court should deny confirmation of the Plan.

/././

C. **THE PLAN PROPOSES AN INADEQUATE INTEREST RATE**

In *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), the United States Supreme Court adopted a two-part "prime-plus" formula for determining the proper interest rate a debtor should pay on a secured claim that complies with the Bankruptcy Code. The *Till* Court stated,

> …the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan.

*Id*. at 478-479.

In discussing the "prime-plus" interest rate calculation, the Supreme Court went on to explain that in starting from a concededly low estimate and adjusting upward, the evidentiary burden is placed squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing. *Id*. at 479.

Here, the Plan proposes Debtor will pay Creditor's secured claim at an interest rate of only 9.50%. *See* Instant Bankruptcy Docket Number 50, p. 3. Such a low interest rate does not satisfy the Supreme Court's "prime-plus" formula and the Plan cannot be confirmed. The Federal Reserve's prime rate is currently 8.50% and therefore Debtor is proposing the minimum interest rate permitted under the *Till* standard. However, as detailed below, the interest rate on Creditor's claim must be at least 11.5% to satisfy *Till* in this case.

/./././

/./././

/./././

/./././

11

First, Debtor has failed and refused to make payments in accordance with the terms of the Note and Deed of Trust for more than twelve years now. *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register. In addition, Debtor has not made a payment on the Loan since March 3, 2020 despite admitting that he resided in the Property when he filed the Fifth Bankruptcy in January 2023.

In the meantime, as outlined above, the Debtor has filed and failed to prosecute a total of five (5) prior bankruptcy cases in order to impede Creditor's ability to enforce its rights under the Note and Deed of Trust. And all of the prior bankruptcies were dismissed due to Debtor's failure to comply with the Bankruptcy Code. Even if Debtor were able to demonstrate that Creditor's claim could be modified, the interest rate proposed by Debtor is woefully insufficient to protect Creditor against the high risk of Debtor's default and the Court should refuse to confirm the Plan.

**D.  THE PLAN FAILS TO ADDRESS THE PAYMENT OF TAXES OR INSURANCE ON THE PROPERTY**

Debtor's Plan fails to address the payment of real property taxes or insurance premiums for the Property. And it is also silent as to the continued operation of the terms of the Note and Deed of Trust, which address such payments and are not altered by the Plan. At the time the Instant Bankruptcy was filed, Creditor had advanced more than $51,000.00 for the payment of real property taxes and insurance on the Property. Because Debtor has failed and refused to make any payments to Creditor during the pendency of the Instant Bankruptcy, that sum has continued to grow. Because the Plan fails to provide for the payment of taxes and insurance for the Property, the Plan fails to provide properly for the treatment of Creditor's claim and the Court should deny confirmation.

**E.  THE PLAN IS NOT FEASIBLE AND HAS NOT BEEN PROPOSED IN GOOD FAITH**

Under 11 U.S.C. § 1129(a)(11), the Court may confirm the Plan only if "[c]onfirmation…is not likely to be followed by liquidation or the need for further financial reorganization of the debtor…unless such further…reorganization is proposed

in the plan." As one court has stated, "[t]he test is whether the things which are to be done after confirmation are only visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Bergman*, 585 F.2d 1171, 1179 (2nd Cir. 1978). Under 11 U.S.C. § 1129(b)(3), the Court cannot confirm a plan if it has been "proposed in good faith and not by any means forbidden by law." Where a proposed plan lacks an adequate means of implementation, the plan has not been proposed in good faith. *In re Walker*, 165 B.R. 994, 1003 (Bankr. E.D. Va. 1994). Here, as detailed below, Debtor's Plan fails to satisfy either of these requirements.

First, the Plan fails to identify any source of the payments that are purportedly to be made pursuant to the Plan because Debtor has failed to complete Article 1 of the official form for small business debtor plans of reorganization. *See* Instant Bankruptcy Docket Number 50, Article 1. The form includes language directing a debtor to "[s]pecify sources of payment, such as infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income." *Id*. However, Debtor has failed to comply with that direction and therefore failed to identify the source of payments to be made under the Plan and the Plan cannot be confirmed in its current state.

Second, the Monthly Operating Reports filed to date demonstrate that Debtor cannot make the payments to secured creditors that are proposed in the Plan. The Plan proposes three monthly payments will be made to Creditor, the Internal Revenue Service, and U.S. Bank National Association. *See* Instant Bankruptcy Docket Number 50, Article 4, Section 4.01, Class 1, Class 2, and Class 3. The three proposed monthly payments total $11,521.42. *Id*. However, Debtor's Monthly Operating Reports demonstrate that the Debtor has had an average net monthly income of only $4,458.75 during the past four months despite making zero payments to any creditor. *See* Instant Bankruptcy Docket Numbers 45, 56, 57, and 81 at p. 2. As such, Debtor cannot demonstrate any ability to make the payments proposed in the Plan and the Plan cannot be confirmed.

13

Third, the Plan is not feasible because the proposed monthly payments on the three secured claims are all understated because none of the proposed interest rates comply with the *Till* standard. The Plan proposes to pay the three claims at either 7.0% or 9.5%. *See* Instant Bankruptcy Docket Number 50 at 2-3. Yet, as detailed above, the likelihood of Debtor defaulting on his obligations again following confirmation remains very high and Debtor cannot demonstrate that he is entitled to pay any less than 11.5% interest on each of the claims.

Fourth, the proposed monthly payment to Creditor is understated because it does not include an escrow impound for the payment of real property taxes and insurance on the Property. As noted above, Debtor's performance under the terms of the Note and Deed of Trust has been so abysmal that Creditor has been forced to advance more than $51,000.00 for the payment of such sums. Yet, the Plan does not even acknowledge that such sums must be paid, let alone provide for their payment. It therefore lacks an adequate means of implementation.

Finally, the purported Liquidation Summary and Financial Projections attached to the Plan fail to provide sufficient information to demonstrate that the Plan is feasible or should be confirmed. *See* Instant Bankruptcy Docket Numbers 50-1 and 50-2. Rather, the Liquidation Summary relies upon Debtor's previously-proposed valuation of the Property at only $560,000.00. More important, the Financial Projections are contradicted by the Schedules Debtor filed under penalty of perjury. *Compare* Instant Bankruptcy Docket Numbers 17 and 50-2.

For example, Debtor's Schedule I identifies Debtor's gross monthly income as only $8,675.38, but the Financial Projections claim Debtor receives $16,700.00 in gross monthly income. *Id*. In addition, the Financial Projections include several monthly expenses that are not included in Debtor's Schedule J. *Id*. And Debtor's filed Monthly Operating Reports reveal that Debtor is making monthly payments to his wife and another relative, which are not included in Debtor's Schedule J or the Financial Projections

attached to the Plan. Debtor paid such sums to both Maribel Soriano and Stephanie Soriano during August and September 2023. *See* Instant Bankruptcy Docket Number 56-1, p. 4, and Instant Bankruptcy Docket Number 81, p. 5.

The information Debtor appears to be relying upon to confirm the Plan is directly contradicted by the documents he has filed under penalty of perjury and Debtor has not carried his burden to demonstrate the plan is feasible or proposed in good faith. As such, the Court should deny confirmation of the Plan.

WHEREFORE, Creditor prays as follows:

1. That confirmation of the proposed Chapter 11 Plan be denied;
2. For attorney's fees and costs incurred herein;
3. For such other and further relief as this Court deems just and proper.

DATED this 14th day of November, 2023.

        **TIFFANY & BOSCO, P.A.**

        By /s/ Regina A. Habermas, Esq.
        **REGINA A. HABERMAS, ESQ.**
        Attorney for Secured Creditor
        10100 W. Charleston Boulevard, Suite 220
        Las Vegas, NV 89135

# EXHIBIT "1"

**EXHIBIT "1"**

Briana Johnson, Assessor

| Assessor Map | Aerial View | Building Sketch | Ownership History | Neighborhood Sales | New Search |

| GENERAL INFORMATION | |
|---|---|
| PARCEL NO. | 177-16-301-020 |
| OWNER AND MAILING ADDRESS | SORIANO VICTOR & MARIBEL<br>8660 GILES ST<br>LAS VEGAS<br>NV 89123-1610 |
| LOCATION ADDRESS | 8660 GILES ST |
| CITY/UNINCORPORATED TOWN | ENTERPRISE |
| ASSESSOR DESCRIPTION | PARCEL MAP FILE 50 PAGE 98<br>LOT 1 |
| RECORDED DOCUMENT NO. | * 20020201:02381 |
| RECORDED DATE | FEB 1 2002 |
| VESTING | JT |
| COMMENTS | |

*Note: Only documents from September 15, 1999 through present are available for viewing.

| ASSESSMENT INFORMATION AND VALUE EXCLUDED FROM PARTIAL ABATEMENT | |
|---|---|
| TAX DISTRICT | 635 |
| APPRAISAL YEAR | 2022 |
| FISCAL YEAR | 2023-24 |
| SUPPLEMENTAL IMPROVEMENT VALUE | 0 |
| INCREMENTAL LAND | 0 |
| INCREMENTAL IMPROVEMENTS | 0 |

| REAL PROPERTY ASSESSED VALUE | | |
|---|---|---|
| FISCAL YEAR | 2022-23 | 2023-24 |
| LAND | 64750 | 70000 |
| IMPROVEMENTS | 99971 | 109113 |
| PERSONAL PROPERTY | 0 | 0 |
| EXEMPT | 0 | 0 |
| GROSS ASSESSED (SUBTOTAL) | 164,721 | 179,113 |
| TAXABLE LAND + IMP (SUBTOTAL) | 470,631 | 511,751 |
| COMMON ELEMENT ALLOCATION ASSESSED | 0 | 0 |
| TOTAL ASSESSED VALUE | 164,721 | 179,113 |
| TOTAL TAXABLE VALUE | 470,631 | 511,751 |

Click here for Treasurer Information regarding real property taxes.

Click here for Flood Control Information.

| ESTIMATED LOT SIZE AND APPRAISAL INFORMATION | |
|---|---|
| ESTIMATED SIZE | 0.57 ACRES |
| ORIGINAL CONST. YEAR | 2002 |
| LAST SALE PRICE | 265000 |
| MONTH/YEAR | 2/2002 |
| SALE TYPE | R - RECORDED VALUE |
| LAND USE | 20.110 - SINGLE FAMILY RESIDENTIAL |
| DWELLING UNITS | 1 |

| PRIMARY RESIDENTIAL STRUCTURE | | | | | |
|---|---|---|---|---|---|
| 1ST FLOOR SQ. FT. | 2395 | CASITA SQ. FT. | | ADDN/CONV | |
| 2ND FLOOR SQ. FT. | | CARPORT SQ. FT. | | POOL | NO |
| 3RD FLOOR SQ. FT. | | STYLE | ONE STORY | SPA | NO |
| UNFINISHED BASEMENT SQ. FT. | 0 | BEDROOMS | 3 | TYPE OF CONSTRUCTION | FRAME-STUCCO |
| FINISHED BASEMENT SQ. FT. | 0 | BATHROOMS | 2 FULL /1 HALF | ROOF TYPE | CONCRETE TILE |
| BASEMENT GARAGE SQ. FT. | 0 | | FIREPLACE | | 0 |
| TOTAL GARAGE SQ. FT. | 651 | | | | |

| ASSESSOR MAP VIEWING GUIDELINES | |
|---|---|
| MAP | 177163 |
| | In order to view the Assessor map you must have Adobe Reader installed on your computer system. |
| | If you do not have the Reader it can be downloaded from the Adobe site by clicking the following button. Once you have downloaded and installed the Reader from the Adobe site, it is not necessary to perform the download a second time to access the maps. |

Note: This record is for assessment use only. No liability is assumed as to the accuracy of the data delineated hereon.

**TIFFANY & BOSCO, P.A.**
Krista J. Nielson, Esq.
Nevada Bar No. 10698
Regina A. Habermas, Esq.
Nevada Bar No. 8481
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone: 702 258-8200
Fax: 702 258-8787
nvbk@tblaw.com
TB File No. 23-72012

Attorneys for *Secured Creditor* NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage Pass-Through Certificates, Series 2007-OA3

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | BK Case No.: 23-12257-mkn |
| VICTOR ALEJANDRO SORIANO AKA VICTOR ALENJANDRO SORIANO FLORES AKA VICTOR A. SORIANO, | Chapter 11 |
| | **CERTIFICATE OF SERVICE** |
| Debtor, | |

### CERTIFICATE OF SERVICE

1. On this 14th day of November, 2023, I served the following documents:

**OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN OF REORGANIZATION #2**

2. I caused to be served the above-named document by the following means to the persons as listed below:

    X   **a. ECF System**

        Seth D Ballstaedt
        help@bkvegas.com
        Attorney for Debtor

1

|  |  |
|---|---|
| 1 | Timothy W Nelson |
|  | tnelson@encpas.com |
| 2 | Trustee |
| 3 |  |
|  | U.S. Trustee – LV – 11 |
| 4 | USTPRegion17.lv.ecf@usdoj.gov |
|  | U.S. Trustee |

Justin Charles Valencia
justin.c.valencia@usdoj.gov
Attorney for U.S. Trustee

    X  **b. United States mail, postage fully prepaid:**

Seth D Ballstaedt
8751 W. Charleston Blvd Suite 220
Las Vegas, NV 89117
Attorney for Debtor

Victor Alejandro Soriano aka Victor Alenjandro Soriano Flores
aka Victor A. Soriano
2750 W. Wigwam Ave Apt 2239
Las Vegas, NV  89123
Debtor

Foley Federal Building and U.S. Courthouse
300 Las Vegas Blvd South
Las Vegas, NV  89101

    **I declare under penalty of perjury the foregoing is true and correct.**

DATED this 14th day of November, 2023.

By:  /s/ Michelle Benson

2