1    **TIFFANY & BOSCO, P.A.**
Krista J. Nielson, Esq.
2    Nevada Bar No. 10698
Regina A. Habermas, Esq.
3    Nevada Bar No. 8481
10100 W. Charleston Boulevard, Suite 220
4    Las Vegas, NV 89135
Telephone: 702 258-8200
5    Fax: 702 258-8787
nvbk@tblaw.com
6    TB File No. 23-72012

7

8    Attorneys for *Secured Creditor* NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage
9    Pass-Through Certificates, Series 2007-OA3

10             **UNITED STATES BANKRUPTCY COURT**

11                **DISTRICT OF NEVADA**

12

13

| | |
|---|---|
| IN RE: | BK Case No. 23-12257-mkn |
| VICTOR ALEJANDRO SORIANO AKA VICTOR ALENJANDRO SORIANO FLORES AKA VICTOR A. SORIANO, | Chapter 11 |
| | **OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION #3** |
| Debtor. | |
| | **Subject Property** |
| | **8660 Giles Street** |
| | **Las Vegas, NV 89123** |

14

15

16

17

18

19         **OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF**
20                   **REORGANIZATION #3**

21         NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of

22    New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the

23    CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage Pass-Through Certificates,

24    Series 2007-OA3 ("Creditor"), a secured creditor in the above-captioned bankruptcy

25    proceeding, hereby submits the following Objection to confirmation of Plan of

26    Reorganization #3 (Docket No. 107, "Plan #3") proposed by Debtor in the above-captioned

action (the "Instant Bankruptcy").  This Objection is based on the authorities cited herein and on such additional submissions and argument as may be presented at or before the confirmation hearing.

## I.  STATEMENT OF FACTS

### A.  Creditor's Mortgage Loan and Proof of Claim

Creditor's claim is evidenced by a promissory note executed by Debtor and dated November 20, 2006, in the original principal sum of $430,000.00 (the "Note").  *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register.  The Note is secured by a deed of trust (the "Deed of Trust") recorded in first position against the real property commonly known as 8660 Giles Street, Las Vegas, NV 89123 (the "Property").  *Id*.  Creditor holds possession of the Note, which is indorsed in blank.  *Id*.  The beneficial interest in the Deed of Trust was also subsequently transferred to Creditor.  *Id*.

In June 2008, Debtor executed a Loan Modification Agreement in which Debtor acknowledged the unpaid principal balance on the loan had increased to $464,016.07 and pursuant to which the adjustable interest rate on the loan was altered.  *Id*.  In August 2009, Debtor executed a second Loan Modification Agreement in which he acknowledged the unpaid principal balance on the loan had increased to $480,801.67 and pursuant to which the interest rate was again altered.  *Id*.  The Note, Deed of Trust, and two Loan Modification Agreements are collectively referred to hereafter as the "Loan."

Creditor filed its Proof of Claim in the Instant Bankruptcy, which is secured by the Property, on August 11, 2023.  *See* Initial Claim Number 8 on the Instant Bankruptcy Claims Register.  Creditor later filed an amended Proof of Claim, secured by the Property, identifying a total claim of $752,614.57, including pre-petition arrears of $405,715.50.  *See* Amended Claim Number 8 on the Instant Bankruptcy Claims Register.  As of the filing of the Petition, Creditor had advanced more than $51,000.00 for the payment of taxes and insurance on the Property.  *Id*.  The monthly payment due on the Loan was

$2,885.08.  *Id.*  The Loan was contractually due for the August 1, 2011 payment, due more than twelve years ago, and Creditor had only received one payment from Debtor between November 21, 2019 and June 2, 2023 when the Instant Bankruptcy was filed.  *Id.*

During the pendency of the Instant Bankruptcy, Debtor has continued to fail and refuse to make payments to Creditor and Creditor has advanced additional sums for the payment of real property taxes and insurance premiums on the Property.  The escrow deficiency on the Loan now exceeds $56,000.00 and Creditor estimates the total amount required to reinstate the Loan as of the filing of this Objection is $434,566.93.  Finally, Creditor estimates the total amount owed to Creditor as of the filing of this Objection is $789,915.35.

**B.  Debtor's Prior Bankruptcy Actions**

Since 2013, Debtor has filed a total of six bankruptcy cases and all five of the prior cases were dismissed due to Debtor's failure to comply with the Bankruptcy Code.  First, on May 30, 2013, Debtor filed a joint voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 13-14770 (the "First Bankruptcy").[1]  The First Bankruptcy was dismissed on December 18, 2014 upon the U.S. Trustee's Motion to Dismiss due to Debtors' "failure to expeditiously prosecute the case as fiduciaries to their creditors".  *See* First Bankruptcy Docket Numbers 39 and 43.

On January 29, 2016, Debtor filed another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 16-10429 (the "Second Bankruptcy").  Once again, the U.S. Trustee sought conversion or dismissal of the case and the Second Bankruptcy was ultimately dismissed on January 11, 2017.  *See* Second

---

[1] Pursuant to Rules 201(b) and 201(d) of the Federal Rules of Evidence, which are made applicable to this proceeding by Rule 9017 of the Federal Rules of Bankruptcy Procedure, Creditor requests that the Court take judicial notice of the papers and pleadings on file and part of the record in Debtor's prior bankruptcy actions and the Instant Bankruptcy.

Bankruptcy Docket Numbers 81 and 90.

Approximately two (2) months after the Second Bankruptcy was dismissed, on March 27, 2017, Debtor filed another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 17-11472 (the "Third Bankruptcy"). The Third Bankruptcy was dismissed on August 19, 2019 upon the motion of Creditor. *See* Third Bankruptcy Docket Numbers 85 and 91.

While the Third Bankruptcy case was still active and pending, on June 11, 2019, Debtor filed yet another voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 19-13714 (the "Fourth Bankruptcy"). The Fourth Bankruptcy was dismissed on February 24, 2020 upon the motion of Creditor. *See* Fourth Bankruptcy Docket Numbers 26 and 100.

Finally, on January 31, 2023, Debtor filed yet another voluntary petition for relief, this time under Chapter 13 of the Bankruptcy Code, and was assigned case number 23-10313 (the "Fifth Bankruptcy"). The Fifth Bankruptcy was dismissed on March 31, 2023 for failure to file required documents under Section 521(i). *See* Fifth Bankruptcy Docket Numbers 12 and 13.

### C. The Instant Bankruptcy

A little more than two months after the Fifth Bankruptcy was dismissed, on June 2, 2023, Debtor filed the bare bones Petition that initiated the Instant Bankruptcy. *See* Instant Bankruptcy Docket Number 1. Debtor failed to file any schedules or financial disclosures until June 16, 2023. *See* Instant Bankruptcy Docket Number 17.

On July 26, 2023, Debtor filed a Motion for an Order Allowing Use of Cash Collateral and Establishing Adequate Protection Payments for Secured Creditors U.S. Bank National Association and Shellpoint Mortgage Servicing (the "Motion to Use Cash Collateral"). *See* Instant Bankruptcy Docket Number 28. The Motion to Use Cash Collateral proposed Debtor would make monthly adequate protection payments to Creditor in the

4

amount of $2,027.00.  *Id.*  On August 2, 2023, Debtor filed an initial Motion to Value Collateral of Mortgage Loan Pursuant to §506(A) (the "Failed Motion to Value"), seeking to value the Property at $560,000.00 and bifurcate Creditor's claim.  *See* Instant Bankruptcy Docket Number 31.

On August 16, 2023, Creditor filed its Opposition to the Failed Motion to Value and established that Debtor had failed to satisfy his burden to demonstrate that the Property should be valued at $560,000.00 or that Creditor's claim should be bifurcated. *See* Instant Bankruptcy Docket Number 40.  The same day Creditor filed its Opposition to the Failed Motion to Value, Debtor filed an Application to Employ Realty One Group to List Certain Real Property on a Commission Bases Pursuant to U.S.C. 327(a) and 328(a) and Federal Rules of Bankruptcy Procedure 2014 (Instant Bankruptcy Docket Number 41, the "Application to Employ Realtor").  Attached to the Application to Employ Realtor was a listing agreement executed in July 2023, pursuant to which Debtor and Maribel Soriano agreed to list the Property for the price of $798,888.00.  *Id*. at 41-2, p. 3 of 21.

On August 30, 2023, the Court held an initial hearing on the Failed Motion to Value.  *See* Instant Bankruptcy Docket Number 48.  During that hearing, the Court noted Creditor opposed the Failed Motion to Value and continued the hearing so that Debtor could provide some evidence the Property was not Debtor's principal residence despite the fact that the Property was Debtor's residence during the Fifth Bankruptcy.  The Court set September 13, 2023 as the deadline for Debtor to file a supplement.  The Court then continued the hearing on the Failed Motion to Value to September 27, 2023.

Debtor failed to file any supplement to the Failed Motion to Value.  *See generally*, Instant Bankruptcy Docket.  As a result, during the continued hearing on September 27, 2023, the Court denied the Failed Motion to Value.  The Court also denied the Motion to Use Cash Collateral during the September 27, 2023 hearing.  The Orders denying the

Failed Motion to Value and Motion to Use Cash Collateral were entered on the Docket on October 11, 2023.  *See* Instant Bankruptcy Docket Numbers 67 and 68.

While the Failed Motion to Value was pending, on August 31, 2023, Debtor filed an initial Plan of Reorganization for Small Business Under Chapter 11.  *See* Instant Bankruptcy Docket Number 49.  On September 5, 2023, only a few days later, Debtor filed Amended Plan of Reorganization #2 (Instant Bankruptcy Docket Number 50, "Plan #2").  Creditor's claim was classified as a secured claim in Class 2 and Debtor proposed a cram down and bifurcation of the claim based upon the alleged valuation of the Property at $560,000.00.  *Id*.

Also on September 5, 2023, Debtor filed an *Ex Parte* Motion for Order Re: Fixing of Deadlines and Procedures (the "Procedures Motion"), in which Debtor requested the Court set a hearing on confirmation of Plan #2 and deadlines related to objections to confirmation and ballots.  *See* Instant Bankruptcy Docket Number 51.  On September 8, 2023, the Court entered its Order granting the Procedures Motion (the "Procedures Order").  *See* Instant Bankruptcy Docket Number 52.  The Procedures Order set the deadline for Debtor to serve a solicitation package as "within five (5) business days of entry of this Order," or September 15, 2023.  *Id*.  The Procedures Order also set October 25, 2023 as the deadline to cast ballots and object to Plan #2.  *Id*.  Finally, the deadline for Debtor to file a reply and ballot summary was set as November 3, 2023, and the confirmation hearing on Plan #2 was set for November 8, 2023.  *Id*.

On October 6, 2023, Debtor filed a Renewed Motion to Value Collateral of Mortgage Loan Pursuant to §506(A) (the "Submitted Motion to Value"), seeking to value the Property at $605,000.00 and bifurcate Creditor's claim based upon that valuation.  *See* Instant Bankruptcy Docket Number 60.  Also on October 6, 2023, Debtor filed a Renewed Motion to Use Cash Collateral (the "Renewed Motion to Use Cash Collateral").  *See* Instant Bankruptcy Docket Number 62.  The Renewed Motion to Use Cash Collateral

proposed Debtor would make monthly adequate protection payments to Creditor in the amount of $2,027.00.  *Id*.

On October 10, 2023, Debtor filed a Stipulation among Debtor and the trustees to continue the confirmation hearing and alter the deadlines related to Plan #2.  *See* Instant Bankruptcy Docket Number 65.  On October 11, 2023, the Court entered its Order approving that stipulation, which continued the confirmation hearing on Plan #2 to November 28, 2023 and extended the deadline for objections to confirmation and casting of ballots to November 14, 2023.  *See* Instant Bankruptcy Docket Number 69.

On October 25, 2023, Creditor filed its Opposition to the Submitted Motion to Value and established that Debtor had failed to satisfy his burden to demonstrate that the Property should be valued at $605,000.00 or that Creditor's claim should be bifurcated. *See* Instant Bankruptcy Docket Number 79.  On November 8, 2023, the Court conducted an initial hearing on the Submitted Motion to Value, granted Debtor's request for yet another continuance, and continued the hearing to November 28, 2023.  *See* Instant Bankruptcy Docket Number 85.

On November 14, 2023, Creditor timely filed a Notice of Rejection of Debtor's Amended Plan of Reorganization #2 as well as an Objection to Confirmation of Debtor's Amended Plan of Reorganization #2.  *See* Instant Bankruptcy Docket Numbers 88 and 89. On November 20, 2023, Debtor filed another Stipulation among Debtor and the trustees to continue the confirmation hearing.  *See* Instant Bankruptcy Docket Number 92.  The same day, the Court entered its Order approving the Stipulation, pursuant to which the confirmation hearing on Plan #2 was continued to January 17, 2024.  *See* Instant Bankruptcy Docket Number 93.

On November 28, 2023, the Court heard oral argument on the Submitted Motion to Value and took the matter under submission.  As of the filing of this Objection, the Court has not entered an order on the Submitted Motion to Value.  *See generally* Instant

Bankruptcy Docket.  On December 15, 2023, the Court entered its Order granting the Renewed Motion to Use Cash Collateral (the "Cash Collateral Order") and Debtor became obligated to make the proposed monthly adequate protection payments of $2,027.00 to Creditor.  *See* Instant Bankruptcy Docket Number 102.

On January 5, 2024, Debtor filed yet another Stipulation among Debtor and the trustees to continue the confirmation hearing on Plan #2.  *See* Instant Bankruptcy Docket Number 104.  The same day, the Court entered its Order approving the Stipulation, pursuant to which the confirmation hearing on Plan #2 was continued to February 14, 2024.  *See* Instant Bankruptcy Docket Number 105.  On January 17, 2024, Debtor filed Plan #3 despite the fact that Plan #2 was still pending before the Court and the confirmation hearing on Plan #2 was scheduled for February 14, 2024.  *See* Instant Bankruptcy Docket Number 107.  Creditor's claim is treated in Class 2, but Plan #3 contains conflicting statements regarding the claim and it is therefore unclear how Debtor proposes to treat Creditor's claim.  *Id*.  Section 2.02 states that Creditor has a claim "to the extent allowed as a secured claim under § 506(a) of the Code."  *Id*.  However, Section 4.01 states,

> *The Claim of Bank of New York Mellon shall be unimpaired in compliance with §1128(b)(5) and the Debtor shall immediately list the collateral for sale for an amount that will satisfy Bank of New York Mellon's claim in its entirety, within a period of not more than six months.  Adequate protection payments, pursuant to the Court's order [ECF 102], shall continue until the sale and payoff of the property.*

*Id*.

On January 31, 2024, the Court held a status hearing in this case.  See Instant Bankruptcy Docket Number 109.  During the status hearing, Debtor's counsel requested leave to conduct a confirmation hearing on Plan #3 rather than Plan #2 on February 14, 2024.  Counsel for Creditor objected to the request and the Court continued the confirmation hearing and status hearing to March 20, 2024.  *See* Instant Bankruptcy

Docket Number 109.  On February 1, 2024, Debtor filed a Notice of Continuance of Confirmation Hearing, which gave notice the confirmation hearing on Plan #3 would be held on March 20, 2024, identified the last day to submit ballots as February 7, 2024, and identified the deadline to object to confirmation as March 6, 2023.  *See* Instant Bankruptcy Docket Number 110.

On February 5, 2024, the Court entered an Order setting the confirmation hearing on Plan #3 for March 20, 2024.  *See* Instant Bankruptcy Docket Number 112.  The deadline to cast ballots was set as February 7, 2024 and the deadline to file objections to confirmation as March 6, 2024.  *Id*.  Debtor's deadline to file a ballot summary was set as March 13, 2024.  *Id*.  However, the Order did not identify the deadline by which Debtor was required to serve solicitation packages related to Plan #3 on interested parties.  *Id*.

Also on February 5, 2023, Debtor filed a Certificate of Service, which stated that Debtor had served Plan #3 and Debtor's Notice of Continuance of Confirmation Hearing on various interested parties.  *See* Instant Bankruptcy Docket Number 113.  However, Debtor did not include the Court's Order setting the confirmation hearing and deadlines related to Plan #3.  *Id*.

On February 7, 2024, the deadline to cast ballots on Plan #3, Creditor filed a Notice of Creditor's Rejection of Debtor's Amended Plan of Reorganization #3.  *See* Instant Bankruptcy Docket Number 115.  Creditor filed the notice because Creditor did not receive a solicitation package or ballot from Debtor prior to the deadline to cast a ballot.  *Id*.  On February 12, 2024, Debtor filed four Certificates of Service related to ballots.  *See* Instant Bankruptcy Docket Numbers 116, 117, 118, 119.  Each Certificate of Service stated that a ballot was mailed "via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing matrix exhibit, a copy of which is attached hereto."  *See e.g.* Instant Bankruptcy Docket Number 118.  Each Certificate of Service also stated that the subject ballot was mailed on February 6, 2024,

the day before parties were required to cast ballots. *Id*. However, the Certificate of Service for the Class 2 Ballot did not include any exhibit identifying the parties or addresses to which the ballot was mailed. *Id*. As of the filing of this Objection, undersigned counsel for Creditor, the holder of the claim treated in Class 2, has not received a ballot and Debtor has failed to file any proof of service of the Class 2 ballot on any party.

On February 21, 2024, Debtor filed a Second Renewed Motion to Value Collateral Pursuant to §506(A) (Instant Bankruptcy Docket Number 121, the "Third Motion to Value") concerning the Property. Contrary to the Failed Motion to Value and Submitted Motion to Value, in this third iteration of the motion, Debtor admits Creditor's claim cannot be modified because it is secured by Debtor's principal residence. *Id*. at 2:7-9. However, the Third Motion to Value states "[t]he value of the Property is anywhere between $560,000.00 and $605,0000.00" and requests that the Court strip the Internal Revenue Service's purportedly wholly unsecured lien from the Property. *Id*. at 2:4-5 and 3:13-14. Although Debtor directed the Court to appraisals previously offered in support of other motions, Debtor failed to include any evidence or a supporting declaration with the Third Motion to Value. *See* Instant Bankruptcy Docket Number 121.

Creditor now objects to Confirmation of Plan #3 as proposed by Debtor.

## II. ARGUMENT

### A. DEBTOR BEARS THE BURDEN TO SHOW PLAN #3 SHOULD BE CONFIRMED

The provisions of 11 "U.S.C." § 1191 set forth the requirements for the Court to confirm a small business plan under Subchapter V of Chapter 11 of the Bankruptcy Code. The burden is on the debtor to demonstrate that the plan meets the conditions essential for confirmation by a preponderance of the evidence. *In re Ambanc LaMesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997). For the reasons detailed herein, Debtor fails to meet this burden.

**B.    DEBTOR'S INCONSISTENT POSITIONS IN THIS ACTION MAKE IT IMPOSSIBLE TO DETERMINE THE TREATMENT OF CREDITOR'S CLAIM**

Throughout the pendency of this action, Debtor has maintained, and continues to maintain, inconsistent positions regarding Creditor's claim and the valuation of the Property securing that claim. In the Failed Motion to Value, Debtor first tried to bifurcate Creditor's claim based upon a valuation of $560,000.00 despite ample evidence that Debtor resided at the Property when this action was filed. Debtor then filed the Submitted Motion to Value and tried to adopt an appraisal of $605,000.00 as of February 2023, which was completed by an appraiser who was denied access to a portion of the Property. And Debtor again sought to bifurcate Creditor's claim based upon the purported valuation of $650,000.00.

In the Third Motion to Value, Debtor is now asking the Court to value the Property at an unidentified number somewhere between $560,000.00 and $605,000.00 and strip the lien of the Internal Revenue Service, which is secured by the Property. *See* Instant Bankruptcy Docket Number 121. Debtor now acknowledges that Creditor's claim cannot be modified pursuant to 11 U.S.C. § 1123(b)(5), which prohibits the modification of "a claim secured only by a security interest in real property that is the debtor's principal residence." *Id*. However, the Third Motion to Value is not supported by any evidence and Creditor has previously identified the deficiencies of the appraisals upon which Debtor attempts to rely. More important, although he acknowledges the Submitted Motion to Value remains under submission, Debtor fails to address the procedural irregularities created by the filing of yet another motion concerning the same topic and issues, in which Debtor has taken a position that is diametrically opposed to the position he took in the Submitted Motion to Value.

Debtor has not sought leave to withdraw the Submitted Motion to Value and, as such, although Creditor believes that motion should not be granted, it remains possible the

Court could enter an order granting Debtor relief to which Debtor now admits he is not entitled. The confirmation hearing on Plan #3 will take place in two weeks; yet, Debtor's various filings have created confusion and unnecessarily increased the proceedings in this action.

Debtor's inconsistent positions are also evidenced in Plan #3 itself and the proposed treatment of Creditor's claim is therefore unclear. The classification of Creditor's claim describes the claim as a secured claim "to the extent allowed as a secured claim under § 506(a) of the Code." *See* Instant Bankruptcy Docket Number 107, § 2.02.[2] The secured claim of the other creditor holding a mortgage on real property of the estate is described as "[t]he secured claim of U.S. Bank National Association." *Id.*, § 2.03. Therefore, Plan #3 arguably still seeks to reduce Creditor's claim based upon Debtor's requested valuation of the Property at $605,000.00. The description of Creditor's claim does nothing to resolve the confusion created by the various motions to value filed by Debtor.

The proposed treatment of Creditor's claim is similarly confusing. Plan #3 describes the claim as "unimpaired in compliance with § 1128(b)(5)" and proposes Debtor will list the Property for sale and make monthly payments of $2,027.00 to Creditor until such time as the Property sells. *See* Instant Bankruptcy Docket Number 107, § 4.01. The remaining language in the proposed treatment may suggest that Creditor's claim will be paid in full upon the sale of the Property because the listing price will be required to be in an amount sufficient to pay Creditor's claim "in its entirety." *Id.* However, the language of the proposed treatment is too vague and ambiguous to determine whether Debtor is actually proposing to pay Creditor's claim in full through a sale of the Property. Plan #3's treatment of Creditor's claim is unclear and reflects the inconsistent positions taken by

---

[2] Plan #2 included an identical description of the claim. *See* Instant Bankruptcy Docket Number 50, § 2.02.

Debtor in this action.

Creditor has an allowed secured claim and Debtor failed to establish any basis upon which to reduce the amount of that claim. 11 U.S.C. § 501(a) provides that a creditor may file a proof of claim in a bankruptcy action. Further, 11 U.S.C. § 502(a) provides that a proof of claim filed under Section 501 "is deemed allowed, unless a party in interest…objects." Finally, Rule 3001(f) of the Federal Rules of Bankruptcy Procedure ("FRBP") provides that a proof of claim executed and filed in accordance with the applicable rules "shall constitute prima facie evidence of the validity and amount of the claim." *See also Diamant v. Kasparian* (*In re So. Cal. Plastics, Inc.*) (9th Cir. 1999) 165 F.3d 1243, 1247-48); *Garner v. Shier* (*In re Garner*), 246 B.R. 617, 620-621 (9th Cir. BAP 2000) (citing Fed. R. Bankr. P. 3001(f)).

Creditor's filed Proof of Claim complies with all applicable rules and, therefore, is prima facie evidence of the amount and validity of Creditor's claim. *See* Claim Number 8-2 on the Instant Bankruptcy Claims Register. Yet, Debtor now proposes to make a monthly payment of only $2,027.00 while attempting to sell the Property. Creditor is certainly not willing to forgive any portion of the debt. And Debtor has not demonstrated any basis upon which the Court should permit Debtor to continue to delay Creditor's enforcement of its rights under the Loan documents and state law. The Court should refuse to confirm Plan #3.

## C.    CREDITOR'S CLAIM IS IMPAIRED UNDER PLAN #3

Plan #3 describes Creditor's claim as "unimpaired;" however, the proposed treatment of the claim alters the rights of Creditor and therefore impairs Creditor's claim. 11 U.SC. § 1124(1) creates two standards to determine whether a claim is impaired under a proposed plan of reorganization. First, if the plan does not alter the "legal, equitable, and contractual rights" of the holder of the claim, the claim is unimpaired. 11 U.S.C. § 1124(1). In the alternative, the plan may cure the debtor's default by paying all

13

arrearages, reinstate the maturity of the claim, compensate the holder of the claim for any damages incurred, and "not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(2). As one court has stated, "[i]mpairment is a term of art, extending beyond a worsening of a creditor's position to include virtually any alteration of the rights of interested parties beyond those specifically designated in § 1124 as not affecting impairment." *In re Reuter*, 427 B.R. 727, 773-74 (Bankr. W.D. Mo. 2010) (citing *In re L & J Anaheim Assoc.*, 995 F.2d 940 (9th Cir. 1993).

Creditor's Loan was due for the August 1, 2011 payment when the Instant Bankruptcy was filed and Debtor owed Creditor more than $405,000.00 in pre-petition arrears. *See* Proof of Claim 8-2 on the Instant Bankruptcy Claims Register. Therefore, there was a significant pre-petition default on the Loan. In addition, Debtor has not made any payments to Creditor since the Instant Bankruptcy was filed. *See generally* Monthly Operating Reports[3]. Yet, Plan #3 proposes that Debtor will list the Property for sale and make monthly payments of $2,027.00 (rather than the $2,885.08 amount identified in the Proof of Claim) until the Property sells. *See* Instant Bankruptcy Docket Number 107, § 4.01 and Claim Number 8-2 on the Instant Bankruptcy Claims Register. It appears Debtor will have a six-month period within which to sell the Property. *See* Instant Bankruptcy Docket Number 107 § 4.01. However, Plan #3 does not state that Creditor's claim will be paid in full from any proceeds of such a sale. *Id*. Plan #3 also fails to provide for the cure of the significant default on the Loan upon the effective date of Plan #3. *Id*. Finally,

---

[3] Debtor's Monthly Operating Reports are available on the Docket of the Instant Bankruptcy as follows: Period ending July 31, 2023, Docket Number 45; Period ending August 31, 2023, Docket Number 56; Period ending June 30, 2023, Docket Number 57; Period ending September 30, 2023, Docket Number 81; Period ending October 2023, Docket Number 90; Period ending November 30, 2023, Docket Number 103; Period ending December 31, 2023, Docket Number 108; Period ending January 31, 2024, Docket Number 120.

it fails to provide for any treatment of the claim in the event the Property does not sell within six months or at all.  *Id.*  Plan #3 alters Creditor's rights under the Loan documents and Nevada law by failing to reinstate the Loan or pay it in full on the effective date of Plan #3.  Therefore, Creditor's claim is impaired and Creditor was entitled to cast a ballot rejecting Plan #3.

**D.    PLAN #3 DOES NOT SATISFY THE BEST INTERESTS OF CREDITORS TEST**

Plan #3 cannot be confirmed because it does not satisfy the best interest of creditors test, which requires that each impaired creditor either accept the proposed plan or "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such creditor would receive or retain if the debtor were liquidated under chapter 7 of [the code] on such date."  11 U.S.C. § 1127(a)(7)(ii).  Debtor bears the burden of providing competent, reliable evidence that Plan #3 is in the best interests of Creditor and any other creditor that does not vote to accept Plan #3.

To show that Creditor will receive under Plan #3 at least as much as Creditor would receive in a Chapter 7 liquidation, Debtor must perform a liquidation analysis that is based upon evidence.  *In re MCorp. Fin. Inc.*, 137 B.R. 219, 228 (Bankr. S.D. Tex. 1992).  Here, Debtor attached a "Liquidation Summary" to Plan #3.  *See* Instant Bankruptcy Docket Number 107.  However, there is no actual analysis included in that summary.  *Id.*  And Debtor has failed to identify the evidence that supports either the total property value or the amount of the claims secured by property of the estate.  *Id.*  Debtor has not filed any motion to value the real property located at 62 East Ford Avenue and the valuation of the Property securing Creditor's claim is the subject of two different motions pending in this case.  As such, Debtor has not proved up the value of the real properties he owns and the purported liquidation analysis is deficient.

More important, Debtor is proposing that Creditor will receive partial monthly payments of only $2,027.00 while Debtor attempts to sell the Property following confirmation of Plan #3. *See* Instant Bankruptcy Docket Number 107. Debtor may be required to sell the Property within six months of confirmation and may be required to pay Creditor's claim in full upon the sale, but the language of Plan #3 is vague and ambiguous. *Id*. Even if Plan #3 clearly set a six-month deadline for Debtor to sell the Property and pay Creditor in full pursuant to the terms of the Note and Deed of Trust, such a provision would not satisfy the best interests of creditors test because Plan #3 is proposing a slow motion liquidation.

In a Chapter 7 case, the trustee would move quickly and efficiently to liquidate the assets of the debtor and pay creditors from the proceeds. In contrast to that scenario, Debtor obtained leave to retain a realtor to sell the Property on September 22, 2023, more than five months ago. *See* Instant Bankruptcy Docket Number 55. And Plan #3 appears to be proposing that Debtor be given an additional six months to sell the Property. *See* Instant Bankruptcy Docket Number 107. Yet, Debtor is not proposing to compensate Creditor for the delay in payment. Creditor would receive more in a liquidation under Chapter 7 than what Debtor proposes in Plan #3. Therefore, the proposed plan does not satisfy the best interests of creditors test and the Court should deny confirmation of Plan #3.

**E.    PLAN #3 IS NOT FEASIBLE AND HAS NOT BEEN PROPOSED IN GOOD FAITH**

Pursuant to 11 U.S.C. § 1191(c)(3), a court shall not confirm a Subchapter V plan unless the "debtor will be able to make all payments under the plan" or there is a reasonable likelihood the debtor will be able to make all payments under the plan and the plan provides appropriate remedies to protect holders of claims in the event payments are not made. In addition, pursuant to 11 U.S.C. § 1129(a)(11), a court may confirm a plan only if "[c]onfirmation…is not likely to be followed by liquidation or the need for further

16

financial reorganization of the debtor…unless such further…reorganization is proposed in the plan." As one court has stated, "[t]he test is whether the things which are to be done after confirmation are only visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *In re Bergman*, 585 F.2d 1171, 1179 (2nd Cir. 1978). Under 11 U.S.C. § 1129(b)(3), the Court may only confirm a plan if it has been "proposed in good faith and not by any means forbidden by law." Where a proposed plan lacks an adequate means of implementation, the plan has not been proposed in good faith. *In re Walker*, 165 B.R. 994, 1003 (Bankr. E.D. Va. 1994). Here, as detailed below, Plan #3 fails to satisfy any of these requirements.

First, Plan #3 fails to identify any source of the payments that are to be made pursuant to Plan #3 because Debtor has once again failed to complete Article 1 of the official form for small business debtor plans of reorganization in full. *See* Instant Bankruptcy Docket Number 107, Article 1. The form includes language directing a debtor to "[s]pecify sources of payment, such as infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income." *Id*. However, Debtor has chosen to leave those instructions in Plan #3 rather than replace them with the required information as directed. *Id*. Because Debtor has failed to identify the source of payments to be made under Plan #3, it cannot be confirmed.

Further, the purported Liquidation Summary attached to Plan #3 fails to provide sufficient information to demonstrate that Plan #3 is feasible or should be confirmed. *See* Instant Bankruptcy Docket Number 107. Rather, the Liquidation Summary still relies upon Debtor's previously-proposed valuation of the Property at only $560,000.00. *Id*. In addition, Debtor has not provided any financial projections with Plan #3 despite proposing that he will make monthly payments to Creditor and the other holder of a mortgage secured by real property of the estate for some time after confirmation. *Id*. Even if Debtor had offered financial projections, they would likely be unreliable as evidenced by Debtor's

filed Monthly Operating Reports.  None of the Monthly Operating Reports has accurately predicted the next month's projected net cash flow.  *See generally* Monthly Operating Reports.  For example, the Monthly Operating Report for the period ending October 31, 2023 predicted that Debtor's net income in November 2023 would be $4,500.00.  *See* Instant Bankruptcy Docket Number 90 at 3.  However, Debtor reported an actual net income in November 2023 of only $1,486.53.  *See* Instant Bankruptcy Docket Number 103 at 2.

The Monthly Operating Reports also demonstrate that Debtor has not made any payments to any creditors during the pendency of the Instant Bankruptcy.  *See generally* Monthly Operating Reports.  The Court did not enter the Cash Collateral Order until December 15, 2023.  *See* Instant Bankruptcy Docket Number 102.  However, Debtor first requested leave to use his creditors' cash collateral and make adequate protection payments to them in July 2023 when he filed the Motion to Use Cash Collateral.  *See* Instant Bankruptcy Docket Number 28.  And he renewed his request to use the cash collateral and make adequate protection payments in October 2023.  *See* Instant Bankruptcy Docket Number 62.  Yet, as of the filing of this Objection, Debtor has failed and refused to commence making monthly payments to the two creditors identified in the Renewed Motion to Use Cash Collateral.

Because Debtor has failed and refused to make any payments to creditors during the pendency of this action, the financial information included in the Monthly Operating Reports is misleading and does not accurately reflect the state of Debtor's financial affairs. According to Debtor's reporting, he has had an average net monthly income of $6,281.53 during the pendency of the Instant Bankruptcy.[4]  However, Debtor was failing to make monthly payments on secured loans in the amount of $2,885.08 (*see* Proof of Claim 8-2

---

[4] This sum results from totaling the "Net cash flow" amounts reported on page 2 and dividing by the seven months for which data has been reported.

on the Instant Bankruptcy Claims Register) and $2,831.51 (*see* Proof of Claim 5 on the Instant Bankruptcy Claims Register).  Subtracting those payments from Debtor's reported net cash flow amounts provides a much more accurate assessment of Debtor's operations and reveals that Debtor's net income during the Instant Bankruptcy has only averaged $582.74 per month.

Plan #3 also fails to satisfy 11 U.S.C. § 1191(c)(3) because Plan #3 does not include any remedies for creditors in the highly likely event that Debtor fails to make the payments required under Plan #3.  Debtor has not submitted sufficient information to demonstrate that confirmation of Plan #3 will not be followed by a further reorganization or liquidation and Debtor has not carried his burden to demonstrate the plan is feasible or proposed in good faith.  As such, the Court should deny confirmation of Plan #3.

## F.    DEBTOR HAS FAILED TO COMPLY WITH THE DUTIES OF A DEBTOR IN POSSESSION

Debtor has failed to comply with his obligations under the Bankruptcy Code in a number of ways.  First, Debtor has failed to file timely monthly operating reports and has failed to attach sufficient information to some of the reports.  *See e.g.* Instant Bankruptcy Docket Numbers 45 (no bank statements or cancelled checks attached); 56 (no cancelled checks attached); 57 (filed more than two months late); 81 (filed after deadline); 120 (no cancelled checks attached).

Second, Debtor has failed and refused to make the payments required by the Cash Collateral Order.  As shown by the filed Monthly Operating Reports, Debtor has not made any payments to any creditors identified in the Schedules since the Instant Bankruptcy was filed.  *See generally* Monthly Operating Reports.

Finally, Debtor has been making regular payments to persons, including his non-filing spouse Maribel Soriano and another apparent family member, Stephanie Soriano, without obtaining Court approval to employ or pay those persons.  Debtor's schedules and other financial disclosures did not identify any employees of Debtor.  *See* Instant

Bankruptcy Docket Number 17.  Moreover, Debtor did not file any "first day motions" seeking authorization to continue to pay employees or other routine business expenses. *See generally* Docket.  11 U.S.C. § 327(a) permits trustees to retain various professionals to assist them in their duties.  And 11 U.S.C. § 1107 permits a debtor in possession to do the same.  Pursuant to 11 U.S.C. § 330(a), the Court may award reasonable compensation to such professionals after notice and a hearing.

In this case, Debtor has filed only two motions to employ professionals – one concerned the employment of Debtor's counsel and the other concerned the employment of a realtor.  *See* Instant Bankruptcy Docket Numbers 25 and 41.  Debtor has never sought Court approval to retain Maribel Soriano or Stephanie Soriano to provide any services to Debtor.  *See generally* Instant Bankruptcy Docket.  Yet, Debtor has paid Maribel Soriano a total of $14,000.00 during the course of this action.  *See* Instant Bankruptcy Docket Numbers 45 at 6; 56-1 at 4; 90 at 15; 103 at 6; and 108 at 8.  And Debtor has paid Stephanie Soriano a total of $3,250.00 during the case.  *See* Instant Bankruptcy Docket Numbers 57-3 at 7; 56-1 at 4; 90 at 15; 108 at 8; and 120 at 6.  Without Court approval, Debtor has paid family members a significant amount of money while paying creditors nothing in violation of his duties as a debtor in possession.  The Court cannot confirm Plan #3 where Debtor has failed to demonstrate his compliance with the Bankruptcy Code.

## G.    DEBTOR FAILED TO SOLICIT BALLOTS PROPERLY

The Procedures Order required Debtor to serve the solicitation package for Plan #2 within five business days of the entry of that order.  *See* Instant Bankruptcy Docket Number 52.  However, the Order setting the confirmation hearing on Plan #3 did not set a deadline for Debtor to serve a related solicitation package.  *See* Instant Bankruptcy Docket Number 112.  Yet, it set February 7, 2024 as the deadline for Debtor's counsel to receive executed ballots on Plan #3.  *Id.*  Debtor did not serve an actual solicitation package for Plan #3.  Rather, on February 1, 2024, Debtor served Plan #3 and Debtor's

purported Notice of the confirmation hearing on Plan #3.  *See* Instant Bankruptcy Docket Number 113.  Debtor did not serve a copy of the Court's Order actually setting the confirmation hearing and deadlines related to Plan #3 at that time.  *Id*.  Rather, it appears that Debtor never gave notice of entry of the Order setting the confirmation hearing and deadlines for Plan #3 and Debtor never served a copy of that Order on any party.  *See generally* Instant Bankruptcy Docket.

Having failed to serve a solicitation package, Debtor made matters worse by mailing ballots to creditors under separate cover and with no apparent context.  *See* Instant Bankruptcy Docket Numbers 116, 117, 118, and 119.  Debtor did not attach a proposed ballot to the Procedures Motion.  *See* Instant Bankruptcy Docket Number 51.  In addition, undersigned counsel for Creditor never received a ballot.  Therefore, it is impossible to determine whether the ballot included sufficient information to permit creditors to understand what the document was.  It is clear that Debtor failed to serve any ballots until February 6, 2024, the day before executed ballots were required to be delivered to Debtor's counsel.  *See* Instant Bankruptcy Docket Numbers 116, 117, 118, and 119.

And, when Debtor finally served a ballot, he sent it via first class mail only.  *Id*.  The timing and method of service of the ballot was not reasonable under the circumstances.  Rather, Debtor's actions virtually assured no creditor would be able to deliver an executed ballot to Debtor's counsel by the February 7, 2024 deadline to do so.  Further, Creditor's counsel never received a ballot and Debtor still has not filed any evidence that the solicitation package for Plan #3 was served on Creditor.  *See* Instant Bankruptcy Docket Number 118.  The solicitation of votes on Plan #3 was flawed and, therefore, the Court cannot confirm Plan #3.

WHEREFORE, Creditor prays as follows:

1. That the Court deny confirmation of Plan #3;

2. For attorney's fees and costs incurred herein;

3.  For such other and further relief as this Court deems just and proper.

DATED this 6th day of March, 2024.

TIFFANY & BOSCO, P.A.

By /s/ Regina A. Habermas, Esq.
**REGINA A. HABERMAS, ESQ.**
Attorney for Secured Creditor
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135

22

**TIFFANY & BOSCO, P.A.**
Krista J. Nielson, Esq.
Nevada Bar No. 10698
Regina A. Habermas, Esq.
Nevada Bar No. 8481
10100 W. Charleston Boulevard, Suite 220
Las Vegas, NV 89135
Telephone:  702 258-8200
Fax:  702 258-8787
nvbk@tblaw.com
TB File No. 23-72012

Attorneys for *Secured Creditor* NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA3 Mortgage Pass-Through Certificates, Series 2007-OA3

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | BK Case No.: 23-12257-mkn |
| VICTOR ALEJANDRO SORIANO AKA VICTOR ALENJANDRO SORIANO FLORES AKA VICTOR A. SORIANO, | Chapter 11 |
| | **CERTIFICATE OF SERVICE** |
| Debtor, | |

## CERTIFICATE OF SERVICE

1.   On this 6th day of March, 2024, I served the following documents:

**OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION #3**

2.   I caused to be served the above-named document by the following means to the persons as listed below:

X  **a. ECF System**

> Seth D Ballstaedt
> help@bkvegas.com
> Attorney for Debtor

1

Timothy W Nelson
tnelson@encpas.com
Trustee

U.S. Trustee – LV – 11
USTPRegion17.lv.ecf@usdoj.gov
U.S. Trustee

Justin Charles Valencia
justin.c.valencia@usdoj.gov
Attorney for U.S. Trustee

**I declare under penalty of perjury the foregoing is true and correct.**

DATED this 6th day of March, 2024.


By:   _/s/Regina A. Habermas_

2